## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINSTRIPES HOLDINGS, INC., *et al.*,[1] | Case No. 25-11677 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) PAYMENT OF PREPETITION OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH THE DEBTORS' INSURANCE PROGRAMS, INCLUDING PAYMENT OF POLICY PREMIUMS AND BROKER FEES, AND (B) CONTINUATION OF PREMIUM FINANCE AGREEMENTS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Interim Order**") and **Exhibit C** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**") (i) authorizing, but not directing, the Debtors (a) to continue and, to the extent necessary, renew, liability, property, and other insurance programs and pay policy premiums and broker fees arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business and consistent with the Interim DIP Order, Final DIP Order, and Approved Budget,[2] and (b) to continue to perform under the terms of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pinstripes Holdings, Inc. (6699); Pinstripes, Inc. (8608); Pinstripes Hillsdale LLC (6064); Pinstripes at Prairiefire, Inc. (7018); and Pinstripes Illinois, LLC (6432). For purposes of these chapter 11 cases, the Debtors' service address is 1150 Willow Road, Northbrook, Illinois 60062.

[2] Each as defined in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay,*

Premium Finance Agreements (as defined below), including paying the premiums owed thereunder, and, to the extent necessary, enter into new Premium Finance Agreements (as defined below) in the ordinary course of business and with the consent of James Katchadurian as the chief restructuring officer (the "**CRO**"); (ii) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing; (iii) scheduling a final hearing with respect to the foregoing; and (iv) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of James Katchadurian in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[3] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

---

*(VI) Scheduling a Final Hearing, and (VII) Granting Related Relief.*

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or an examiner. Simultaneously herewith, the Debtors have filed a motion seeking to have these chapter 11 cases jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

4.      Additional information regarding the Debtors' businesses, their capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

## I.      Insurance Programs

5.      In the ordinary course of business, the Debtors maintain a comprehensive insurance program (the "**Insurance Program**").  This program includes multiple insurance policies (each a "**Policy**" and, collectively, the "**Policies**").  The Policies vary in amounts and types of coverage in accordance with prudent business practices, state, and local laws governing the jurisdictions in which the Debtors operate, and various contractual obligations.  The Policies are listed on __Exhibit A__ hereto (the "**Insurance Schedule**") and include property liability, general liability, automobile liability, workers' compensation liability, excess liability, cyber liability, directors and

officers liability, and employment practices liability.[4]   For each Policy, the Insurance Schedule includes or otherwise identifies, among other things: (i) the corresponding insurance carrier (each an "**Insurance Carrier**," and collectively, the "**Insurance Carriers**"); (ii) the policy number; (iii) the coverage period; (iv) the annual premium, including associated fees, and (v) whether the policy is financed.[5]

6.      The Policies are essential to preserve the value of the Debtors' business, property, and assets during these chapter 11 cases.   Not only are some of the Policies required by the various regulations, laws, and contracts that govern the Debtors' commercial activities, but section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.   11 U.S.C. § 1112(b)(4)(C).   Moreover, the *Operating Guidelines for Chapter 11 Cases* of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") require debtors to maintain insurance coverage throughout the pendency of chapter 11 cases.

7.      The total annual premiums and related fees under the current Policies are approximately $3.2 million, which included a payment of $629,000.00 to bind the tail policy for D&O insurance coverage, which the Debtors paid on August 18, 2025.[6]   As of the Petition Date,

---

[4]     The Policies summarized on the Insurance Schedule are representative only and are not intended to restrict the Debtors from changing carriers or programs, or adding different types of insurance, in the reasonable exercise of the Debtors' discretion.

[5]     In addition to the Insurance Programs discussed herein, the Debtors maintain an insurance policy with respect to the Debtors' workers' compensation program (the "**Workers' Compensation Program**"), which is listed on **Exhibit A** attached hereto.   The Workers' Compensation Program is described in further detail in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay and Honor Certain (A) Prepetition Wages, Benefits, and Other Compensation Obligations; (B) Prepetition Employee Business Expenses; and (C) Workers' Compensation Obligations; (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Obligations; and (III) Granting Related Relief* (the "**Wages Motion**"), and the Debtors seek authority to continue the Workers' Compensation Program through the Wages Motion.

[6]     Calculations for total annual premiums and for the annual premium under each Policy listed in the Insurance Schedule include additional charges on certain Policies such as broker commissions, surcharges, taxes, and other

the Debtors believe they are substantially current on all of their Policies.  The Debtors seek authority to continue the Policies in the ordinary course of business on the terms set forth in the Proposed Orders.

**III.    Premium Finance Agreements**

8.    It is not always economically advantageous for the Debtors to pay the premiums on their Policies on a lump-sum basis.  Accordingly, the Debtors finance the premiums for their Policies pursuant to premium financing agreements (each a "**Premium Finance Agreement**" and collectively, the "**Premium Finance Agreements**") with third-party lenders.  The ability to finance the Policies and avoid paying a lump sum premium for such Policies in advance provides significant benefits to the Debtors' liquidity position.

9.    Currently, the Debtors are financing the premiums for all of their Policies, other than the D&O tail Policy, through two (2) Premium Finance Agreements with AFCO Direct ("**AFCO**"), attached hereto as **Exhibit D** (the "**AFCO Premium Finance Agreements**").[7] Pursuant to the AFCO Premium Finance Agreements, the Debtors paid down payments totaling $527,000.00 and are financing premiums and related fees totaling $2,071,408.11 through monthly payments over the course of the policy period (12 months).  The Debtors have made eight (8) out of ten (10) monthly payments, each in the amount of $159,247.95, under one of the AFCO Premium Finance Agreements, and seven (7) out of nine (9) monthly payments, each in the amount of $53,214.29, under the other AFCO Premium Finance Agreement.  The next monthly payments under the AFCO Premium Finance Agreements, in the aggregate amount of $212,462.24, were due on September 1, 2025, and the Debtors seek authority, but not direction, to make that payment

---

policy fees.  The Debtors seek to make payments to these charges as well as on the base premiums due.

[7]    The monthly payment amount includes the premium plus fees.

and the October monthly payment through the Proposed Interim Order, in each case consistent with the Interim DIP Order, Final DIP Order, and Approved Budget.

10.    Through this Motion, the Debtors seek authority to continue making payments under the AFCO Premium Finance Agreements in the ordinary course of business and, to the extent necessary, to renew the AFCO Premium Finance Agreements or enter into substantially similar Premium Finance Agreements post-petition if approved by the CRO.

## IV.    Broker Fees

11.    In connection with the Insurance Programs, the Debtors obtain brokerage and risk management services from Lockton Companies - Illinois (the "**Broker**").  The Broker assists the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, assisting the Debtors with the design and development of the Insurance Program, and the procurement and negotiation of the Insurance Program, and enabling the Debtors to obtain those Policies on advantageous terms at competitive rates.  The Broker receives payment for its fees directly from the insurance premium payments.  As of the Petition Date, the Debtors do not believe that any accrued and unpaid pre-petition fees are owed to the Broker for its services ("**Broker Fees**"), other than with respect to the June monthly payment.  The Debtors seek authority to pay all Broker Fees in the ordinary course of business consistent with the Interim DIP Order, Final DIP Order and Approved Budget.

## <u>RELIEF REQUESTED</u>

12.    By this Motion, the Debtors request that the Court enter the Proposed Orders, (i) authorizing, but not directing, the Debtors to (a) continue and, to the extent necessary, renew the Insurance Program and pay Policy premiums and Broker Fees arising thereunder or in connection therewith, including any prepetition obligations arising in the ordinary course of

business and consistent with the Interim DIP Order, Final DIP Order and Approved Budget, and (b) continue to finance their Policies under the AFCO Premium Finance Agreements and, to the extent necessary, renew or enter into new Premium Finance Agreements on substantially similar terms with the consent of the CRO; (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto; (iii) scheduling a final hearing with respect to the foregoing; and (iv) granting related relief.

## **BASIS FOR RELIEF**

I.   **The Court Should Authorize, but not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Related to the Insurance Programs to Maintain Existing Insurance Coverage**

13.    Maintaining the Debtors' insurance coverage under the Insurance Program is a crucial ordinary-course-of-business transaction.  Authority to pay any prepetition amounts that may be due and owing related to the Insurance Program—to the extent that the Debtors determine that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of the coverage, benefits, or proceeds provided under the Insurance Program—is necessary, as the insurance coverage provided under the Insurance Program is essential for preserving the value of the Debtors' assets and, in most cases, such coverage is required by the various contracts and state and federal laws that govern the Debtors. *See, e.g.*, 28 U.S.C. § 959(b) (chapter 11 debtor obligated under federal law to operate chapter 11 business according to the laws of the states where business and properties are located).  Further, under the chapter 11 operating guidelines issued by the United States Trustee for Region 3 pursuant to 28 U.S.C. § 586, the Debtors are obligated to maintain during these chapter 11 cases certain types of insurance coverage, which coverage is provided by certain of the Policies included in the Insurance Program.

14.     In addition, the Debtors may need to renew or replace certain of their Policies during the pendency of these chapter 11 cases.  The nonpayment of any premiums, deductibles, or related fees under any of the Policies could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew the insurance policies, or refusing to enter into new insurance agreements with the Debtors.  If the Insurance Program lapses without renewal, the Debtors may be exposed to substantial liability for first party property claims and third-party liability claims, to the detriment of all parties in interest.

15.     Similarly, the services provided by the Broker are critical to ensuring that the Debtors obtain the necessary insurance coverage on advantageous terms at competitive rates, and the Broker has a significant amount of institutional knowledge regarding the Debtors' insurance needs.  If the Debtors were forced to replace the Broker, the Debtors would necessarily be required to spend time, energy, and resources getting a new insurance broker up to speed on the Debtors' insurance needs.

16.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court may use its equitable powers under section 105 of the Bankruptcy Code to permit a debtor in possession to pay prepetition claims when payment is necessary to effectuate a debtor's bankruptcy goals and essential to the continued operation of the business. *See Miltenberger v. Logansport. C. & S.W.R. Co.*, 106 U.S. 286 (1882); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (under necessity of payment doctrine prepetition claims may be paid if essential to the continued operation of the business during reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (recognizing that necessity of payment doctrine authorizes

payment of prepetition claims when "such payment is essential to the continued operation of the business").

17.     In addition, the Court may authorize the Debtors to pay prepetition premiums to maintain insurance coverage under section 363(b) of the Bankruptcy Code.  In particular, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Thus, under this section, a court may authorize a debtor to pay certain prepetition claims.  *See Ionosphere Clubs*, 98 B.R. 174, 175-77 (S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); *In re Jillian's Entm't Holdings, Inc.*, Case No. 04-33192 (DTS) (Bankr. W.D. Ky. June 22, 2004).

18.     Furthermore, reflecting the recognition that payment of prepetition claims associated with a debtor's insurance program is critical to a debtor's chapter 11 efforts, courts in this District have routinely granted the relief requested herein in other chapter 11 cases.

**II.    The Court Should Authorize, but not Direct, the Debtors, in Their Discretion, to Make Necessary Payments Under the AFCO Premium Finance Agreements and Renew the AFCO Premium Finance Agreements and/or Enter into New Premium Finance Agreements in the Ordinary Course of Business**

19.     If the Debtors are unable to continue making payments under the AFCO Premium Finance Agreements, AFCO may be permitted to terminate the Policies.  The Debtors would then be required to obtain replacement insurance on an expedited basis and likely at a significantly increased cost.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay to AFCO under the AFCO Premium Finance Agreements.  Even if AFCO

is not permitted to terminate the Policies, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies. Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing the insurance premiums, the Debtors believe that it is in the best interest of their estates and creditors for the Court to authorize the Debtors to honor the obligations under the AFCO Premium Finance Agreements. Any other alternative would likely require considerable cash expenditures and would be detrimental to the Debtors' restructuring efforts.

20.     Generally, the AFCO Premium Finance Agreements grant AFCO a security interest in the Policies, including all unearned premiums, return premiums, dividends, and loss payments thereof. Security interests created by premium finance agreements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981). Therefore, if the Debtors fail to make the required payments under the Premium Finance Agreement, AFCO could seek relief from the automatic stay, either to cancel the Financed Policies in accordance with the terms of the Premium Finance Agreement or to seek adequate protection of its investment. *See Universal Motor Express*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay). Accordingly, the practical solution from the Debtors' perspective is to continue making the premium financing payments required under the AFCO Premium Finance Agreements.

21.     In addition, the Debtors submit that the Court should authorize them, with the consent of the CRO, to renew or enter into new Premium Finance Agreements post-petition, as

necessary, in the ordinary course of business.  Section 363(c)(1) of the Bankruptcy Code provides that "the trustee [or a debtor in possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Debtors submit that the renewal of the AFCO Premium Finance Agreements and/or the execution of new Premium Finance Agreements constitute transactions in the ordinary course of business, within the meaning of section 363(c)(1) of the Bankruptcy Code, that do not require Court approval.

22.     Neither the Bankruptcy Code nor its legislative history provides a framework for analyzing whether a transaction is in the ordinary course of business.  The Third Circuit, however, has developed a two-part inquiry, including a "horizontal dimension" test and a "vertical dimension" test, for determining whether a transaction is in the ordinary course of business under section 363(c)(1).  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992); *see, e.g., In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 791 (Bankr. D. Del. May 24, 2007); *Braunstein v. McCabe*, 571 F. 3d 108, 124-25 (1st Cir. 2009).  The horizontal dimension test focuses on whether, from an industry-wide perspective, the transaction is "of the sort commonly undertaken by companies in that industry."  *In re Roth Am.*, 975 F.2d 202 at 953.  The vertical dimension test (or creditor's expectation test) focuses on the vantage point of a hypothetical creditor and inquires whether the transaction subjects the creditor to economic risk of a nature different from those the creditor accepted when it decided to extend credit to the debtor.  *Id.*

23.     The Debtors believe that the renewal of the AFCO Premium Finance Agreements and/or the execution of new Premium Finance Agreements, to the extent necessary, satisfy the "horizontal dimension" test because maintaining insurance coverage and entering into related premium finance agreements is a common industry practice.  *See Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1154 (Fed. Cir. 1986) (such a premium finance agreement is a "common commercial arrangement.").  The Debtors believe that "vertical dimension" test is also similarly satisfied because the maintenance of insurance under premium finance agreements does not subject estate creditors to any economic risk, but rather, serves to protect them from economic risk.  Accordingly, the renewal of the AFCO Premium Finance Agreements and/or the execution of new Premium Finance Agreements constitute "ordinary course" uses of estate property under section 363(c)(1) of the Bankruptcy Code.  *See In re Roth Am.*, 975 F.2d at 952 n.4 (citing *U.S. v. Estate of Deutscher*, 115 B.R. 592, 598-99 (M.D. Tenn. 1990), for the proposition that the "trustee's use of fund to . . . reinstate insurance was in ordinary course of business").

24.     Indeed, the Debtors submit that it may be outside the ordinary course of business for them to fail to renew the AFCO Premium Finance Agreements or enter into new Premium Finance Agreements to obtain insurance coverage.  *See In re Lavigne*, 114 F.3d 379, 383-84 (2d Cir. 1994) (cancellation of insurance policy was not in the ordinary course of business). Nevertheless, out of an abundance of caution, the Debtors seek entry of the Proposed Orders, to the extent necessary, approving, under section 363 of the Bankruptcy Code, the Debtors' post-petition renewal of the AFCO Premium Finance Agreements and/or the execution of new Premium Finance Agreements, to the extent necessary.

25.     The Court may also authorize the Debtors to enter into new Premium Finance Agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes,

after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate. *See* 11 U.S.C. § 364(c)(2). Under any new Premium Finance Agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies. *See generally In re Schwinn Bicycle Co.*, 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium finance agreements).

26. Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates. *See, e.g., In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125-26 (Bankr. S.D.N.Y., May 14, 2009) (granting motion for postpetition financing upon finding that (a) "no comparable credit [was] available on more favorable terms"; (b) that the debtors needed post-petition financing to "to preserve [their] assets and continue their operations"; and (c) that the terms and conditions of the DIP Documents had been negotiated in good faith); *In re Budget Grp., Inc.*, Case No. 02-12152, 2002 Bankr. LEXIS 1050 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"). Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Debtors submit that the Court should authorize them to renew the AFCO Premium Finance Agreements and/or execute new Premium Finance Agreements postpetition, to the extent necessary.

**III.    The Court Should Authorize the Banks to Honor and Process the Debtors' Payments Related to the Insurance Programs, the Premium Finance Agreement, and the Broker Fees**

27.    The Debtors also request the Court to authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request that all of the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**CAUSE EXISTS TO AUTHORIZE THE DEBTORS' FINANCIAL INSTITUTIONS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS**

28.    The Debtors further request that the Court (a) authorize the Banks to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the relief sought herein to the extent that the Debtors have sufficient funds on deposit in their accounts with the Banks, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (b) authorize the Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.  The Debtors anticipate having sufficient funds to pay the amounts described herein.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify whether checks or wire transfer requests are payments authorized by the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to payments authorized by the relief requested herein, will not be honored inadvertently.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED
## AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

29.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days after the commencement of a chapter 11 case to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors believe an immediate and orderly transition into chapter 11 is critical to the success of these chapter 11 cases. As discussed in detail above and demonstrated by the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Failure to maintain insurance coverage my impair the value of the Debtors' assets and may lead to future rises in premiums or an inability to obtain insurance coverage. Thus, maintaining coverage and paying the existing premiums is crucial to the success of these chapter 11 cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

30.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief sought herein is necessary for the Debtors to operate their business without interruption, thereby preserving value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

15

## **RESERVATION OF RIGHTS**

31.     Nothing in the Proposed Orders or this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## **NOTICE**

32.     Notice of this Motion will be given to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Agent and Existing Silverview Agent; (c) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims against the Debtors; (d) the United States Attorney for the District of Delaware; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; (g) the United States Securities and Exchange Commission; (h) the Insurance Carrier; (i) AFCO; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order[s] granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: September 8, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Shella Borovinskaya
Michael R. Nestor (No. 3526)
Sean M. Beach (No. 4070)
Elizabeth S. Justison (No. 5911)
Shella Borovinskaya (No. 6758)
Mariam Khoudari (No. 7516)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  mnestor@ycst.com
         sbeach@ycst.com
         ejustison@ycst.com
         sborovinskaya@ycst.com
         mkhoudari@ycst.com

Proposed Counsel for the Debtors
and Debtors in Possession

**EXHIBIT A**

**List of Insurance Contracts**

| INSURANCE PROGRAM | INSURANCE CARRIER | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM AND RELATED COSTS | FINANCED? (YES/NO) |
|---|---|---|---|---|---|---|
| Property | Zurich American Insurance Company | PRA 5640286-03 | 12/01/2024 | 12/01/2025 | $339,722 | YES |
| General Liability | Texas Insurance Company | BESGLPTIL011401_170625_01 | 12/01/2024 | 12/01/2025 | $674,473 | YES |
| Workers Compensation | Zurich American Insurance Company | WC 4983043-03 | 12/01/2024 | 12/01/2025 | $619,494 | YES |
| Excess Liability | HDI Specialty Insurance Company | XLXD6794500S | 12/01/2024 | 12/01/2025 | $264,601 | YES |
| Automobile Liability | American Guarantee and Liability Insurance Company | PRA 5640286 – 03 | 12/01/2024 | 12/01/2025 | $12,859 | YES |
| Cyber Liability | At-Bay Specialty Insurance Company | AB-6782772-01 | 01/01/2025 | 12/01/2025 | $8,157 | YES |

| INSURANCE PROGRAM | INSURANCE CARRIER | POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE | APPROXIMATE ANNUAL PREMIUM AND RELATED COSTS | FINANCED? (YES/NO) |
|---|---|---|---|---|---|---|
| Directors & Officers | Berkshire Hathaway Specialty Insurance Company | 47-EPC-332903-02 | 12/29/2024 | 12/29/2025 | $345,000 | YES |
| 1st Excess Directors & Officers Side A | Old Republic Professional Liability, Inc. | ORPRO 12 105983 | 12/29/2024 | 12/29/2025 | $175,000 | YES |
| 2nd Excess Directors & Officers Side A | Samsung Fire & Marine Insurance Co., Ltd | SGC 1585-00 | 12/29/2024 | 12/29/2025 | $55,125 | YES |
| Directors & Officers Tail | Berkshire Hathaway Specialty Insurance Company | PENDING | PENDING | PENDING | $629,000 | NO |
| Employment Practices Liability | Homesite Insurance Company | BCP-028369-01 | 12/29/2024 | 12/29/2025 | $32,140 | YES |

## EXHIBIT B

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PINSTRIPES HOLDINGS, INC., *et al.*,[1] | Case No. 25-11677 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING (A) PAYMENT OF PREPETITION
OBLIGATIONS INCURRED IN THE ORDINARY COURSE OF BUSINESS IN
CONNECTION WITH THE DEBTORS' INSURANCE PROGRAMS, INCLUDING
PAYMENT OF POLICY PREMIUMS AND BROKER FEES, AND (B) CONTINUATION
OF PREMIUM FINANCE AGREEMENTS; (II) AUTHORIZING BANKS TO HONOR
AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED
THERETO; (III) SCHEDULING A FINAL HEARING;
AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of an interim order (this

"**Interim Order**"), pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code,

(i) authorizing, but not directing, the Debtors (a) to continue and, to the extent necessary, renew,

the Insurance Program and pay Policy premiums and Broker Fees arising thereunder or in

connection therewith, including prepetition obligations arising in the ordinary course of business,

and (b) to continue to perform under the terms of the AFCO Premium Finance Agreements,

including paying the premiums owed thereunder, and, to the extent necessary, enter into new

Premium Finance Agreements in the ordinary course of business; and (ii) authorizing the Banks

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pinstripes Holdings, Inc. (6699); Pinstripes, Inc. (8608); Pinstripes Hillsdale LLC (6064); Pinstripes at Prairiefire, Inc. (7018); and Pinstripes Illinois, LLC (6432).  For purposes of these chapter 11 cases, the Debtors' service address is 1150 Willow Road, Northbrook, Illinois 60062.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

to honor and process check and electronic transfer requests related to the foregoing; and upon consideration of the First Day Declaration and the record of these chapter 11 cases; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors, and is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003(b); and after due deliberation and sufficient cause appearing therefore, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      Objections to entry of an order granting the Motion on a final basis must be filed by _____, 2025 at 4:00 p.m. (ET) and served on: (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor, Esq. (mnestor@ycst.com), Sean M. Beach, Esq. (sbeach@ycst.com), Elizabeth S. Justison, Esq. (ejustison@ycst.com), and Shella Borovinskaya, Esq. (sborovinskaya@ycst.com); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware, 19801, Attn: Benjamin A. Hackman, Esq. (Benjamin.A.Hackman@usdoj.gov); (c) counsel for the DIP Agent and Existing Silverview Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware

2

19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com), John Lucian, Esq. (john.lucian@blankrome.com), Stanley B. Tarr, Esq. (stanley.tarr@blankrome.com) and Alston & Bird LLP, 90 Park Avenue, 15th Floor, New York, New York 10016, Attn: James Vincequerra, Esq. (james.vincequerra@alston.com) and Stephen Blank, Esq. (stephen.blank@alston.com); and (d) counsel to any statutory committee appointed in these chapter 11 cases.  A final hearing, if required, on the Motion will be held on _____, 2025 at _____.m. (ET).  If no objections are filed to the Motion, this Court may enter a final order without further notice or hearing.

3.      The Debtors are authorized, but not directed, to maintain the Insurance Program without interruption, and to renew, supplement, modify, or extend (including through obtaining "tail" coverage) the Policies, or enter into new insurance policies, and to incur and pay policy premiums and broker fees arising thereunder or in connection therewith, in accordance with the same practices and procedures that were in effect prior to the Petition Date, and in each case with the consent of James Katchadurian as chief restructuring officer (the "**CRO**").

4.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, retrospective adjustments, administrative fees, broker fees (including, without limitation, the Broker Fees), and any other obligations that were due and payable or related to the period prior to the Petition Date on account of the AFCO Premium Finance Agreements; *provided,* that payments on account of accrued and unpaid prepetition amounts with respect to the AFCO Premium Finance Agreements, which were due September 1, 2025 and October 1, 2025, shall (i) not exceed $500,000.00 pending entry of a final order and (ii) are consistent with the Interim DIP Order, Final DIP Order, and Approved Budget.

3

5.      The Debtors are authorized to (a) continue, in the ordinary course of business, the Policies and the AFCO Premium Finance Agreements, and renew or enter into new Premium Finance Agreements, as necessary and with the consent of the CRO, under substantially similar terms, and (b) pay the installment payments under the AFCO Premium Finance Agreements and any such new Premium Finance Agreements as the same become due in the ordinary course of business and consistent with the Interim DIP Order, Final DIP Order, and Approved Budget. Absent further order of this Court upon notice, during the course of these chapter 11 cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the AFCO Premium Financing Agreements.

6.      Any payments or actions contemplated by, or made in connection with, this Interim Order, shall be subject, in all respects to, and limited by, the Interim DIP Order and the Approved Budget (as each is defined in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*).

7.      Nothing in this Interim Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay any claim.

8.      The Banks shall be, and are, hereby authorized, when requested by the Debtors, to process, honor, pay, and, if necessary, reissue any and all checks or electronic funds transfers, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' accounts, whether those checks were presented before or after the Petition Date, provided that sufficient funds are available in such accounts to make the payments.

9.      The Banks may rely on the Debtors' representations with respect to whether any check or other transfer drawn or issued by the Debtors before the Petition Date should be honored pursuant to this Interim Order, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Interim Order.

10.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.     The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

# EXHIBIT C

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PINSTRIPES HOLDINGS, INC., *et al.*,[1] | Case No. 25-11677 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. _____ & _____** |

**FINAL ORDER (I) AUTHORIZING (A) PAYMENT OF PREPETITION OBLIGATIONS
INCURRED IN THE ORDINARY COURSE OF BUSINESS IN CONNECTION WITH
THE DEBTORS' INSURANCE PROGRAMS, INCLUDING PAYMENT OF POLICY
PREMIUMS AND BROKER FEES, AND (B) CONTINUATION OF PREMIUM
FINANCE AGREEMENTS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS
CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO;
AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") for the entry of an order (this "**Final

Order**"), pursuant to sections 105(a), 363(b), and 364 of the Bankruptcy Code, (i) authorizing, but

not directing, the Debtors (a) to continue and, to the extent necessary, renew, the Insurance

Program and pay Policy premiums and Broker Fees arising thereunder or in connection therewith,

including prepetition obligations arising in the ordinary course of business, and (b) to continue to

perform under the terms of the AFCO Premium Finance Agreements, including paying the

premiums owed thereunder, and, to the extent necessary, enter into new Premium Finance

Agreements in the ordinary course of business; and (ii) authorizing the Banks to honor and process

check and electronic transfer requests related to the foregoing; and upon consideration of the First

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pinstripes Holdings, Inc. (6699); Pinstripes, Inc. (8608); Pinstripes Hillsdale LLC (6064); Pinstripes at Prairiefire, Inc. (7018); and Pinstripes Illinois, LLC (6432).  For purposes of these chapter 11 cases, the Debtors' service address is 1150 Willow Road, Northbrook, Illinois 60062.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Day Declaration and the record of these chapter 11 cases; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court, if any; and this Court having previously entered the *Interim Order (I) Authorizing (A) Payment of Prepetition Obligations Incurred in the Ordinary Course of Business in Connection with the Debtors' Insurance Programs, Including Payment of Policy Premiums and Broker Fees, and (B) Continuation of Premium Finance Agreements; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. ___]; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefore, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain the Insurance Program without interruption, and to renew, supplement, modify, or extend (including through obtaining "tail" coverage) the Policies, or enter into new insurance policies, and to incur and pay policy premiums and broker fees arising thereunder or in connection therewith, in accordance with the same practices and procedures that were in effect prior to the Petition Date, and in each case with the consent of James Katchadurian as chief restructuring officer (the "**CRO**").

3.     The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, retrospective adjustments, administrative fees, broker fees (including, without limitation, the Broker Fees), and any other obligations that were due and payable or related to the period prior to the Petition Date on account of the AFCO Premium Finance Agreements.

4.     The Debtors are authorized to (a) continue, in the ordinary course of business, the Policies and the AFCO Premium Finance Agreements, and renew or enter into new Premium Finance Agreements, as necessary and with the consent of the CRO, under substantially similar terms, and (b) pay the installment payments under the AFCO Premium Finance Agreements and any such new Premium Finance Agreements as the same become due in the ordinary course of business and consistent with the Interim DIP Order, Final DIP Order, and Approved Budget. Absent further order of this Court upon notice, during the course of these chapter 11 cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the AFCO Premium Financing Agreements.

5.     Any payments or actions contemplated by, or made in connection with, this Final Order, shall be subject, in all respects to, and limited by, the Final DIP Order and the Approved Budget (as each is defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief*).

6.     Nothing in this Final Order:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive,

or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay any claim.

7. The Banks shall be, and are, hereby authorized, when requested by the Debtors, to process, honor, pay, and, if necessary, reissue any and all checks or electronic funds transfers, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' accounts, whether those checks were presented before or after the Petition Date, provided that sufficient funds are available in such accounts to make the payments.

8. The Banks may rely on the Debtors' representations with respect to whether any check or other transfer drawn or issued by the Debtors before the Petition Date should be honored pursuant to this Final Order, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Final Order.

9. The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

## **EXHIBIT D**

**Premium Finance Agreements**

**PREMIUM FINANCE AGREEMENT-PROMISSORY NOTE**

**AFCO**DIRECT
A division of AFCO Credit Corporation

150 North Field Drive, Suite 190, Lake Forest, Illinois 60045
Phone 877-226-5456  www.afcodirect.com

Quote Number
2735191.4

| Agent/Broker/Producer (Name and Address) | Insured (Name and Address as shown on the policy(ies) including all insureds covered by the policies below) |
|---|---|
| Lockton Companies - Illinois<br>500 W. Monroe, Ste 3400<br>Chicago, IL 60661 | Pinstripes, Inc.; Pinstripes Holdings, Inc.<br>1150 Willow Road<br>Northbrook, IL 60062 |
| Telephone Number: 312-669-6900    Agency Code:5078 | Telephone Number: 815-693-0587 |

**Creditor: AFCO Credit Corporation**                    Federal Truth In Lending Disclosures

| (A) Total Premiums | (B) Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) FINANCE CHARGE (The dollar amount the credit will cost you) | (E) Total of Payments (The amount you will have paid after you have made all payments as scheduled) | (F) ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) |
|---|---|---|---|---|---|
| $1,911,148.66 | $372,000.00 | $1,539,148.66 | * $53,330.84 | $1,592,479.50 | 7.49% |

| Your PAYMENT SCHEDULE will be: Monthly | *Includes a non-refundable service charge of $40.00 | If the borrower under this Agreement is a consumer, you will receive an Itemization of the Amount Financed |
|---|---|---|
| No. of Payments | Amount of Payments | When Payments are Due | |
| 10 | $159,247.95 | On the 1st day of the month, beginning 1/1/2025 | |

Security: You are giving a security interest in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased.
Late Charge: You will be charged 5% of the payment, subject to a minimum charge of $1.00 on any payment received more than 5 days after the due date.
Cancellation Charge: You will be charged a cancellation charge of $25.00 if AFCO cancels any insurance policy in accordance with the terms of this Agreement.
Prepayment: If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.
See Above and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

**SCHEDULE OF POLICIES**

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Address of General or policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| PRA 5640286-03 | 12/1/2024 | Zurich American Insurance Company<br>1299 Zurich Way Schaumburg, IL 60196-1056 | PROPERTY | 12 | $339,015.00 |
| Audit= N | | | | | |
| Min Ernd= 0% | | | Ref. Tax/Fee: | | $706.66 |
| MinCxlDays= 10 | | | Non-Ref. Tax/Fee: | | $0.00 |

In consideration of the payment(s) to be made by AFCO CREDIT CORPORATION ("AFCO") to the above insurance company(ies) ("Insurer(s)"), either directly or through your or their agents, representatives, or producer, the above-named insured ("Insured") (jointly and severally if more than one):
1) PROMISE OF PAYMENT: Promises to pay to the order of AFCO at the above address or any address AFCO may designate, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sums due pursuant to this Agreement. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement. AFCO may, at its option, pay loan proceeds to any agent, broker, general agent, managing general agent or insurer set forth herein. Payments to AFCO are deemed made only upon receipt in good funds. Checks are accepted, subject to collection
(2) SECURITY INTEREST AND POWER OF ATTORNEY:  Irrevocably appoints AFCO as Attorney-In-Fact with full authority to affect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to AFCO or in which it has granted AFCO a security interest.  AFCO may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered hereby in furtherance of this Agreement.  The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.
(3) RECEIPT OF AGREEMENT AND PRIVACY NOTICE:  Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of AFCO's Privacy Statement.
**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE.  2.  YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT.  3.  UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

**INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON ALL PAGES OF THIS AGREEMENT**

| Pinstripes, Inc.; Pinstripes Holdings, Inc. | | Insured | 12/6/2024 |
|---|---|---|---|
| INSURED'S NAME | SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |
| | | | |
| INSURED'S NAME | SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE | TITLE | DATE |

**AGENT/BROKER/PRODUCER WARRANTIES AND REPRESENTATIONS**

The undersigned warrants and agrees:  1. The policies listed in the Schedule of Policies are in full force and effect, and the information and the premiums are correct.  2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein.  3. To hold in trust for AFCO any payments made or credited to the Insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies, their representatives or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the Insured.  4. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinate to AFCO's lien or security interest therein.  5. The policies comply with AFCO's eligibility requirements.  6. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included.  7.  The deposit or provision premiums are not less than anticipated premiums to be earned for the full term of the policies.  8.  The policies can be cancelled by the Insured and the unearned premiums will be computed on the standard short-rate or pro-rata table.  9.  A proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named Insured borrower.  10.  That it has received the down payment and any other sums due as required by the Agreement and is holding same or they are attached to this Agreement.  11. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement.  12. AFCO will rely upon these representations in determining whether to accept this Agreement.
**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

Signed by:

| Lockton Companies - Illinois | Mary Keiser | Agent | 12/6/2024 |
|---|---|---|---|
| AGENT OR BROKER | SIGNATURE OF AGENT OR BROKER | TITLE | DATE |

1

(4) ASSIGNMENT OF SECURITY INTEREST AND POWER OF ATTORNEY: The Insured assigns and hereby gives a security interest to AFCO as collateral for the total amount payable in this Agreement and any other past, present or future unearned premiums under the financed policies and any loss payments which reduce the unearned premiums, and any interest payable for any reason under all insurance policies financed by AFCO, (b) loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interests and (c) any interest in any state guarantee fund relating to any financed policy. If any circumstances exist in which all premiums related to any policy could become fully earned in the event of any loss, AFCO shall be named a loss-payee with respect to such policy. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. The Insured irrevocably appoints AFCO as its attorney in fact with full authority to (i) cancel all insurance financed by AFCO for the reason set forth in paragraph 13, whether pursuant to this or any other agreement, (ii) receive all sums hereby assigned to AFCO and (iii) execute and deliver on the Insured's behalf all documents, instruments of payment, forms and notices of any kind relating to the insurance in furtherance of this Agreement.

(5) WARRANTY OF ACCURACY: The Insured (i) warrants that all listed insurance policies have been issued to it and are in full force and effect and that it has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees; (ii) authorizes AFCO to insert or correct on this Agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment and to correct any obvious errors; and (iii) authorizes AFCO to correct or remedy any error or omission in the completion of this Agreement. In the event of any such change, correction or insertion, or of any change in Blocks (A) thru (F), or in the Federal Truth-In-Lending Disclosures or in the Itemization of the Amount Financed Disclosures the Insured will be notified at the address shown hereon.

(6) REPRESENTATION OF SOLVENCY: The Insured represents that it is not insolvent or the subject of any insolvency proceeding.

(7) ADDITIONAL PREMIUMS: The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured resulting from any type of misclassification of the risk. The Insured shall pay to the insurer any additional premiums or any other sums that become due for any reason. The Insured agrees that, in the event the total premiums are greater than that shown hereon, or if the Insured requests additional premiums be added or additional premiums financed, this Agreement may be amended to reflect the actual premiums and the Insured will either (i) pay the difference in premium due or (ii) pay any required additional down payment and any additional finance charge permitted by law. In such event AFCO will forward the Insured a revision notice showing all information required by law. If AFCO assigns the same account number to any additional extension or extensions of credit, (i) this Agreement and any agreement or agreements identified by such account number shall be deemed to comprise a single and indivisible loan transaction, (ii) any default with respect to any component of such transaction shall be deemed a default with respect to all components of such transaction and (iii) any unearned premiums relating to any component of such transaction may be collected and applied by AFCO to the totality of such transaction.

(8) SPECIAL INSURANCE POLICIES: If the insurance policy is auditable or is a reporting form policy or is subject to retrospective rating, then the Insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

(9) FIRST NAMED INSURED: If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds regarding the policy, then the same shall apply to this Agreement and the Insured represents that it is authorized to sign on behalf of all insureds. If not, then all insureds' names must be shown on this Agreement unless a separate agreement appoints an insured to act for the others.

(10) FINANCE CHARGE: The finance charge shown in Block D begins to accrue as of the earliest policy effective date, unless otherwise indicated in the Schedule of Policies, and shall continue to accrue until the balance due AFCO is paid in full or until such other date as required by law, notwithstanding any cancellation of coverage. If AFCO issues a Notice of Cancellation, AFCO may recalculate the total finance charge payable pursuant to this Agreement, and the Insured agrees to pay interest, on the Amount Financed set forth herein, from the first effective date of coverage, at the highest lawful rate of interest.

(11) AGREEMENT BECOMES A CONTRACT: This Agreement becomes a binding contract when AFCO mails the Insured its written acceptance and is not a contract until such time. The Insured agrees that (i) this Agreement may be transmitted by facsimile, E-mail or other electronic means to AFCO, (ii) any such transmitted Agreement shall be deemed a fully enforceable duplicate original document and (iii) such Agreement, when accepted by AFCO, shall constitute a valid and enforceable contract.

(12) DEFAULT AND DISHONORED CHECK CHARGES: If the Insured is late in making a loan payment to AFCO by more than the number of days specified by law the Insured will pay to AFCO a delinquency charge equal to the maximum charge permitted by law. If a check is dishonored, AFCO may re-present the check electronically and collect a service fee not to exceed the lesser of $25 or the amount permitted by law.

**(13) CANCELLATION: AFCO may cancel all insurance policies financed by AFCO after giving statutory notice and the full balance due to AFCO shall be immediately payable if the Insured does not pay any installment according to the terms of this or any other Agreement with AFCO. Payment of unearned premiums shall not be deemed to be payment of installments to AFCO, in full or in part.**

(14) CANCELLATION CHARGES: If AFCO cancels an insurance policy in accordance with the terms of this Agreement the Insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.

(15) MONEY RECEIVED AFTER NOTICE OF CANCELLATION: Any payments made to AFCO after mailing of AFCO's Notice of Cancellation may be credited to the Insured's account without affecting the acceleration of this Agreement and without any liability or obligation to request reinstatement of a canceled policy. In the event that AFCO requests, on the Insured's behalf, reinstatement of the policy, such request does not guarantee that coverage will be reinstated. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus paid over to whomever itis entitled. No refund of less than $1shall be made. In case of a deficiency, the Insured shall remain liable and pay the same with interest as set forth above.

(16) ATTORNEY FEES - COLLECTION EXPENSE: If, for collection, this Agreement is referred to an attorney and/or other party who is not a salaried employee of AFCO, the Insured agrees to pay any reasonable attorney fees and costs as well as other reasonable collection expenses, as permitted by law or granted by the court.

(17) PREPAYMENT AND REFUND CREDITS: The Insured may voluntarily prepay the full amount due and under certain conditions be entitled to receive a partial refund of the FINANCE CHARGE computed in accordance with the method prescribed by law, after deducting any fully earned charge permitted by law. AFCO may retain an additional non-refundable service charge as indicated on Page 1 of this Agreement. Any minimum or fully earned fees will be deducted as permitted by law. The Insured agrees that any refunds may be applied against any debts owed AFCO.

(18) INSURANCE AGENT OR BROKER: The insurance agent or broker named in this Agreement is the Insured's agent, not AFCO's and AFCO is not legally bound by anything the agent or broker represents to the Insured orally or in writing. AFCO has not participated in the choice, placement, acquisition or underwriting of any financed insurance. Any disclosures made by the agent are made in its capacity as the Insured's agent and AFCO makes no representations with respect to the accuracy of any such disclosures.

(19) NOT A CONDITION OF OBTAINING INSURANCE: This Agreement is not required as a condition of obtaining insurance coverage.

(20) SUCCESSORS AND ASSIGNS: All legal rights given to AFCO shall benefit AFCO's successors and assigns. The Insured will not assign this Agreement and/or the policies without AFCO's written consent except for the interest of mortgagees and loss payees.

(21) LIMITATION OF LIABILITY - CLAIMS AGAINST AFCO: The Insured hereby irrevocably waives and releases AFCO from any claims, lawsuits and causes of action which may be related to any prior loans and/or to any act or failure to act prior to the time that this Agreement becomes a binding contract, pursuant to paragraph 11. AFCO's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding, except in the event of gross negligence or willful misconduct. Any claims against AFCO shall be litigated exclusively in the Supreme Court of the State of New York, County of New York.

(22) DISCLOSURE: The insurance company or companies and their agents, any intermediaries and the insurance agent or broker named in this Agreement and their successors are authorized and directed to provide AFCO with full and complete information regarding all financed insurance policy or policies, including, without limitation, the status and calculation of unearned premiums.

(23) ENTIRE DOCUMENT - GOVERNING LAW - ENFORCEMENT VENUE: This document is the entire agreement between AFCO and the Insured and can only be changed in a writing signed by both parties except as stated in paragraph (5). The laws of the state indicated in the Insured's address as set forth herein will govern this Agreement. AFCO may, at its option, prosecute any action to enforce its rights hereunder in the Supreme Court of the State of New York, County of New York, and the Insured (i) waives any objection to such venue and (ii) will honor any order issued by or judgment entered in such Court.

(24) WAIVER OF SOVEREIGN IMMUNITY: The Insured hereby certifies that it is empowered to enter into this Agreement without any restrictions and that the individual signing it has been fully empowered to do so. To the extent that the Insured either possesses or claims sovereign immunity for any reason, such sovereign immunity is expressly waived and the Insured agrees to be subject to the jurisdiction of the laws and courts set forth in the preceding paragraphs.

2

# ADDENDUM TO PREMIUM FINANCE AGREEMENT – PROMISSORY NOTE

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Address of General or policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| BESGLPTIL01140 1_170625_01 <br><br> Audit= Y <br> Min Ernd= 25% <br> AddCxlDays= 10 | 12/1/2024 | Texas Insurance Company <br> R-T Specialty, LLC - Chicago <br> 10150 York Road, 5th Floor Suite 4000 Hunt Valley, MD 21030 | GENERAL LIABILITY <br><br><br> Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | 12 | $651,148.00 <br><br> $23,050.00 <br> $275.00 |
| PRA 5640286-03 <br><br> Audit= N <br> Min Ernd= 0% <br> AddCxlDays= 10 | 12/1/2024 | American Guarantee & Liability Insurance Co <br> 1299 Zurich Way Schaumburg, IL 60196-1056 | AUTO LIABILITY <br><br><br> Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | 12 | $12,859.00 <br><br> $0.00 <br> $0.00 |
| WC 4983043-03 <br><br> Audit= Y <br> Min Ernd= 0% <br> AddCxlDays= 10 | 12/1/2024 | Zurich American Insurance Company <br> 1299 Zurich Way Schaumburg, IL 60196-1056 | WORKERS COMP - GUARANTEED COST <br><br> Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | 12 | $606,685.00 <br><br> $0.00 <br> $12,809.00 |
| XLXD6794500S <br><br> Audit= N <br> Min Ernd= 25% <br> AddCxlDays= 10 | 12/1/2024 | HDI Specialty Insurance Company <br> 161 N Clark St 48th FL Chicago, IL 60601 | UMBRELLA <br><br><br> Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | 12 | $255,555.00 <br><br> $9,046.00 <br> $0.00 |
| Audit= <br> Min Ernd= <br> AddCxlDays= | | | Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | | |
| Audit= <br> Min Ernd= <br> AddCxlDays= | | | Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | | |
| Audit= <br> Min Ernd= <br> AddCxlDays= | | | Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | | |
| Audit= <br> Min Ernd= <br> AddCxlDays= | | | Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | | |
| Audit= <br> Min Ernd= <br> AddCxlDays= | | | Ref. Tax/Fee: <br> Non-Ref. Tax/Fee: | | |





## Recurring ACH Debit Authorization Form

Please complete this fillable digital form to have your payments automatically debited from your account listed below. Email the completed form to your Agent/Broker with your signed PFA. Or email directly to AFCO Direct at payments@afcodirect.com. If you need to print this form, please fax to 877.226.5297.

| | |
|---|---|
| Name: | Pinstripes, Inc.; Pinstripes Holdings, Inc. |
| Address: | 1150 Willow Road Northbrook, IL 60062 |
| Phone: | 815-693-0587 |
| Quote or Account # | 2735191.4 |

| | |
|---|---|
| Account Holder Name: | |
| Bank Name: | |
| Account Type: | Checking ☐    Savings ☐ |
| Routing Number: | |
| Account Number: | |
| Payment Confirmation Email Address: | |

PLEASE ATTACH A VOIDED CHECK FOR ACCOUNT VERIFICATION & CONFIRMATION PURPOSES. It is agreed that you hereby authorize AFCO Direct to initiate an automatic debit to the financial account indicated (and authorize said financial institution to honor such debit) for any and all installments due under the AFCO Direct quote or account number listed above. It is further agreed that any additional fees, including but not limited to, late fees, non-sufficient funds fees and cancellations fee, will also be charged and debited from the indicated account should they accrue during the term of the loan. The debited installment amount is subject to change in the event of the financing of an additional premium or the crediting of an endorsement refund to the original PFA which has been processed to your existing account. You further understand, agree and affirm that: (1) the information you have provided above is correct and accurate; (2) you are authorized to enter into this agreement and are the signer on the above account; (3) funds will be available to cover the amount of the existing obligation on the payment due date or the business day prior to the due date should the due date fall on a weekend or holiday; (4) this authorization will remain in full force and effect until either (a) you request termination of this agreement by providing AFCO Direct written notice of the desire to terminate automatic ACH debit fifteen (15) days prior to desired termination date at the address or email below and/or (b) you receive written notification from AFCO Direct of termination resulting from the rejection of an ACH debit due to NSF or a closed account. AFCO Direct reserves the right to remove this ACH Debit Authorization at its sole discretion should an ACH debit be returned as unpaid for any reason, but AFCO Direct reserves its right to reestablish future ACH debits based on this authorization unless this authorization has been terminated as outlined above; (5) You may authorize changes to the bank account to be debited, authorize the extension of this document to additional AFCO Direct accounts or quotes, and authorize its use to ACH debit for the Down Payment on the indicated quote or account or any subsequent authorized quote or account, provided that authorization is granted in writing (an email request is deemed an acceptable notification in writing). You are authorizing AFCO Direct to act upon such request, without the necessity of an additional ACH Debit Authorization form; (6) Please check below if you wish for AFCO Direct to initiate an ACH Debit for the Down Payment on your quote/account. Do not provide this authorization if you have or intend to send the Down Payment directly to your authorized Insurance Agent. You hereby grant to your authorized Insurance Agent a limited attorney-in-fact to authorize AFCO Direct to initiate an ACH Debit for your Down Payment, either through use of the check box below or with their written instruction to AFCO Direct (an email request from your Insurance Agent to AFCO Direct is deemed an acceptable notification in writing).

☐ **I INCLUDE DOWN PAYMENT. By checking this box, you authorize AFCO Direct to initiate an ACH debit for your down payment and you are confirming you have not issued, nor do you intend to issue, the down payment directly to your authorized Insurance Agent.**

## Authorized & Agreed to by:

BY: _____    _____    _____

Authorized Signatory of Account Holder    Printed Name & Title    Date

**AFCO DIRECT**
A division of AFCO Credit Corporation

**PREMIUM FINANCE AGREEMENT-PROMISSORY NOTE**
150 North Field Drive, Suite 190, Lake Forest, Illinois 60045
Phone 877-226-5456  www.afcodirect.com

Quote Number
2754761.1

| Agent/Broker/Producer (Name and Address) | Insured (Name and Address as shown on the policy(ies) including all insureds covered by the policies below) |
|---|---|
| Lockton Companies - Illinois<br>500 W. Monroe, Ste 3400<br>Chicago, IL 60661 | Pinstripes, Inc.; Pinstripes Holdings, Inc.<br>1150 Willow Road<br>Northbrook, IL 60062 |
| Telephone Number: 312-669-6900     Agency Code:5078 | Telephone Number: 815-693-0587 |

**Creditor: AFCO Credit Corporation**          Federal Truth In Lending Disclosures

| (A) Total Premiums | (B) Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) FINANCE CHARGE (The dollar amount the credit will cost you) | (E) Total of Payments (The amount you will have paid after you have made all payments as scheduled) | (F) ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) |
|---|---|---|---|---|---|
| $616,265.85 | $155,000.00 | $461,265.85 | * $17,662.76 | $478,928.61 | 7.49% |

Your **PAYMENT SCHEDULE** will be: Monthly

*Includes a non-refundable service charge of $40.00

If the borrower under this Agreement is a consumer, you will receive an Itemization of the Amount Financed

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 9 | $53,214.29 | On the 1st day of the month, beginning 2/1/2025 |

<u>Security:</u> You are giving a security interest in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased.
<u>Late Charge:</u> You will be charged 5% of the payment, subject to a minimum charge of $1.00 on any payment received more than 5 days after the due date.
<u>Cancellation Charge:</u> You will be charged a cancellation charge of $25.00 if AFCO cancels any insurance policy in accordance with the terms of this Agreement.
<u>Prepayment:</u> If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.
<u>See Above</u> and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Address of General or policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| PRA 5640286-03 | 12/1/2024 | American Guarantee & Liability Insurance Co<br>1299 Zurich Way, 10th Floor Schaumburg, IL 60196-1056 | AUTO LIABILITY | 12 | $844.00 |
| Audit= N | | | | | |
| Min Ernd= 0% | | | Ref. Tax/Fee: | | $0.00 |
| AddCxlDays= 10 | | | Non-Ref. Tax/Fee: | | $0.00 |

In consideration of the payment(s) to be made by AFCO CREDIT CORPORATION ("AFCO") to the above insurance company(ies) ("Insurer(s)"), either directly or through your or their agents, representatives, or producer, the above-named insured ("Insured") (jointly and severally if more than one):
1) PROMISE OF PAYMENT: Promises to pay to the order of AFCO at the above address or any address AFCO may designate, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sums due pursuant to this Agreement. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement. AFCO may, at its option, pay loan proceeds to any agent, broker, general agent, managing general agent or insurer set forth herein. Payments to AFCO are deemed made only upon receipt in good funds. Checks are accepted, subject to collection
(2) SECURITY INTEREST AND POWER OF ATTORNEY: Irrevocably appoints AFCO as Attorney-In-Fact with full authority to affect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. AFCO may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered hereby in furtherance of this Agreement. The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.
(3) RECEIPT OF AGREEMENT AND PRIVACY NOTICE: Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of AFCO's Privacy Statement.
**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

### INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON ALL PAGES OF THIS AGREEMENT

Pinstripes, Inc.; Pinstripes Holdings, Inc.

| | | Insured | 01/14/2025 |
|---|---|---|---|
| **INSURED'S NAME** | **SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE** | **TITLE** | **DATE** |

| | | | |
|---|---|---|---|
| **INSURED'S NAME** | **SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE** | **TITLE** | **DATE** |

### AGENT/BROKER/PRODUCER WARRANTIES AND REPRESENTATIONS

The undersigned warrants and agrees: 1. The policies listed in the Schedule of Policies are in full force and effect, and the information and the premiums are correct. 2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein. 3. To hold in trust for AFCO any payments made or credited to the Insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies, their representatives or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the Insured. 4. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinate to AFCO's lien or security interest therein. 5. The policies comply with AFCO's eligibility requirements. 6. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included. 7. The deposit or provision premiums are not less than anticipated premiums to be earned for the full term of the policies. 8. The policies can be cancelled by the Insured and the unearned premiums will be computed on the standard short-rate or pro-rata table. 9. A proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named Insured borrower. 10. That it has received the down payment and any other sums due as required by the Agreement and is holding same or they are attached to this Agreement. 11. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement. 12. AFCO will rely upon these representations in determining whether to accept this Agreement.
**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT.**

Signed by:

Lockton Companies - Illinois          Agent          1/15/2025

| **AGENT OR BROKER** | **SIGNATURE OF AGENT OR BROKER** | **TITLE** | **DATE** |
|---|---|---|---|

1

(4) ASSIGNMENT OF INTEREST AND POWER OF ATTORNEY: The Insured assigns and hereby gives a security interest to AFCO as collateral for the total amount payable in this Agreement and any other past, present or future premiums and all other sums owed to AFCO and hereby grants to AFCO, to the extent that such funds will become available for any reason under all insurance policies financed by AFCO, (b) loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interests and (c) any interest in any state guarantee fund relating to any financed policy. If any circumstances exist in which all premiums related to any policy could become fully earned in the event of any loss, AFCO shall be named a loss-payee with respect to such policy. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. The Insured irrevocably appoints AFCO as its attorney in fact with full authority to (i) cancel all insurance financed by AFCO for the reason set forth in paragraph 13, whether pursuant to this or any other agreement, (ii) receive all sums hereby assigned to AFCO and (iii) execute and deliver on the Insured's behalf all documents, instruments of payment, forms and notices of any kind relating to the insurance in furtherance of this Agreement.

(5) WARRANTY OF ACCURACY: The Insured (i) warrants that all listed insurance policies have been issued to it and are in full force and effect and that it has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees;  (ii) authorizes AFCO to insert or correct on this Agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment and to correct any obvious errors; and (iii) authorizes AFCO to correct or remedy any error or omission in the completion of this Agreement. In the event of any such change, correction or insertion, or of any change in Blocks (A) thru (F), or in the Federal Truth-In-Lending Disclosures or in the Itemization of the Amount Financed Disclosures the Insured will be notified at the address shown hereon.

(6) REPRESENTATION OF SOLVENCY: The Insured represents that it is not insolvent or the subject of any insolvency proceeding.

(7) ADDITIONAL PREMIUMS: The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured resulting from any type of misclassification of the risk. The Insured shall pay to the insurer any additional premiums or any other sums that become due for any reason. The Insured agrees that, in the event the total premiums are greater than that shown hereon, or if the Insured requests additional premiums be added or additional premiums financed, this Agreement may be amended to reflect the actual premiums and the Insured will either (i) pay the difference in premium due or (ii) pay any required additional down payment and any additional finance charge permitted by law.  In such event AFCO will forward the Insured a revision notice showing all information required by law. If AFCO assigns the same account number to any additional extension or extensions of credit, (i) this Agreement and any agreement or agreements identified by such account number shall be deemed to comprise a single and indivisible loan transaction, (ii) any default with respect to any component of such transaction shall be deemed a default with respect to all components of such transaction and (iii) any unearned premiums relating to any component of such transaction may be collected and applied by AFCO to the totality of such transaction.

(8) SPECIAL INSURANCE POLICIES: If the insurance policy is auditable or is a reporting form policy or is subject to retrospective rating, then the Insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

(9) FIRST NAMED INSURED: If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds regarding the policy, then the same shall apply to this Agreement and the Insured represents that it is authorized to sign on behalf of all insureds. If not, then all insureds' names must be shown on this Agreement unless a separate agreement appoints an insured to act for the others.

(10) FINANCE CHARGE: The finance charge shown in Block D begins to accrue as of the earliest policy effective date, unless otherwise indicated in the Schedule of Policies, and shall continue to accrue until the balance due AFCO is paid in full or until such other date as required by law, notwithstanding any cancellation of coverage. If AFCO issues a Notice of Cancellation, AFCO may recalculate the total finance charge payable pursuant to this Agreement, and the Insured agrees to pay interest, on the Amount Financed set forth herein, from the first effective date of coverage, at the highest lawful rate of interest.

(11) AGREEMENT BECOMES A CONTRACT: This Agreement becomes a binding contract when AFCO mails the Insured its written acceptance and is not a contract until such time. The Insured agrees that (i) this Agreement may be transmitted by facsimile, E-mail or other electronic means to AFCO, (ii) any such transmitted Agreement shall be deemed a fully enforceable duplicate original document and (iii) such Agreement, when accepted by AFCO, shall constitute a valid and enforceable contract.

(12) DEFAULT AND DISHONORED CHECK CHARGES: If the Insured is late in making a loan payment to AFCO by more than the number of days specified by law the Insured will pay to AFCO a delinquency charge equal to the maximum charge permitted by law. If a check is dishonored, AFCO may re-present the check electronically and collect a service fee not to exceed the lesser of $25 or the amount permitted by law.

**(13) CANCELLATION: AFCO may cancel all insurance policies financed by AFCO after giving statutory notice and the full balance due to AFCO shall be immediately payable if the Insured does not pay each installment according to the terms of this or any other Agreement with AFCO. Payment of unearned premiums shall not be deemed to be payment of installments to AFCO, in full or in part.**

(14) CANCELLATION CHARGES: If AFCO cancels an insurance policy in accordance with the terms of this Agreement the Insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.

(15) MONEY RECEIVED AFTER NOTICE OF CANCELLATION: Any payments made to AFCO after mailing of AFCO's Notice of Cancellation may be credited to the Insured's account without affecting the acceleration of this Agreement and without any liability or obligation to request reinstatement of a canceled policy. In the event that AFCO requests, on the Insured's behalf, reinstatement of the policy, such request does not guarantee that coverage will be reinstated.  Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus paid over to whomever itis entitled.  No refund of less than $1shall be made. In case of a deficiency, the Insured shall remain liable and pay the same with interest as set forth above.

(16) ATTORNEY FEES - COLLECTION EXPENSE: If, for collection, this Agreement is referred to an attorney and/or other party who is not a salaried employee of AFCO, the Insured agrees to pay any reasonable attorney fees and costs as well as other reasonable collection expenses, as permitted by law or granted by the court.

(17) PREPAYMENT AND REFUND CREDITS: The Insured may voluntarily prepay the full amount due and under certain conditions be entitled to receive a partial refund of the FINANCE CHARGE computed in accordance with the method prescribed by law, after deducting any fully earned charge permitted by law.  AFCO may retain an additional non-refundable service charge as indicated on Page 1 of this Agreement. Any minimum or fully earned fees will be deducted as permitted by law.  The Insured agrees that any refunds may be applied against any debts owed AFCO.

(18) INSURANCE AGENT OR BROKER: The insurance agent or broker named in this Agreement is the Insured's agent, not AFCO's and AFCO is not legally bound by anything the agent or broker represents to the Insured orally or in writing. AFCO has not participated in the choice, placement, acquisition or underwriting of any financed insurance. Any disclosures made by the agent are made in its capacity as the Insured's agent and AFCO makes no representations with respect to the accuracy of any such disclosures.

(19) NOT A CONDITION OF OBTAINING INSURANCE: This Agreement is not required as a condition of obtaining insurance coverage.

(20) SUCCESSORS AND ASSIGNS: All legal rights given to AFCO shall benefit AFCO's successors and assigns. The Insured will not assign this Agreement and/or the policies without AFCO's written consent except for the interest of mortgagees and loss payees.

(21) LIMITATION OF LIABILITY - CLAIMS AGAINST AFCO: The Insured hereby irrevocably waives and releases AFCO from any claims, lawsuits and causes of action which may be related to any prior loans and/or to any act or failure to act prior to the time that this Agreement becomes a binding contract, pursuant to paragraph 11. AFCO's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding, except in the event of gross negligence or willful misconduct. Any claims against AFCO shall be litigated exclusively in the Supreme Court of the State of New York, County of New York.

(22) DISCLOSURE: The insurance company or companies and their agents, any intermediaries and the insurance agent or broker named in this Agreement and their successors are authorized and directed to provide AFCO with full and complete information regarding all financed insurance policy or policies, including, without limitation, the status and calculation of unearned premiums.

(23) ENTIRE DOCUMENT - GOVERNING LAW - ENFORCEMENT VENUE: This document is the entire agreement between AFCO and the Insured and can only be changed in a writing signed by both parties except as stated in paragraph (5). The laws of the state indicated in the Insured's address as set forth herein will govern this Agreement.  AFCO may, at its option, prosecute any action to enforce its rights hereunder in the Supreme Court of the State of New York, County of New York, and the Insured (i) waives any objection to such venue and (ii) will honor any order issued by or judgment entered in such Court.

(24) WAIVER OF SOVEREIGN IMMUNITY: The Insured hereby certifies that it is empowered to enter into this Agreement without any restrictions and that the individual signing it has been fully empowered to do so. To the extent the Insured either possesses or claims sovereign immunity for any reason, such sovereign immunity is expressly waived and the Insured agrees to be subject to the jurisdiction of the laws and courts set forth in the preceding paragraphs.

2

# ADDENDUM TO PREMIUM FINANCE AGREEMENT – PROMISSORY NOTE

## SCHEDULE  OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Address of General or policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| AB-6782772-01<br><br>Audit=  N<br>Min Ernd=  0%<br>AddCxlDays=  10 | 1/1/2025 | At-Bay Specialty Insurance Company<br>Amwins Access Insurance Services - Atlanta, GA<br>3630 Peachtree Rd NE Ste 1700 Atlanta, GA 30326 | CYBER LIABILITY<br><br><br>Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | 11 | $6,984.00<br><br>$247.00<br>$926.00 |
| 47-EPC-332903-02<br><br>Audit=  N<br>Min Ernd=  0%<br>AddCxlDays=  10 | 12/29/2024 | Berkshire Hathaway Specialty Ins Co<br>1314 Douglas St Ste 1400 Omaha, NE 68102 | DIRECTORS & OFFICERS<br><br><br>Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | 12 | $345,000.00<br><br>$0.00<br>$0.00 |
| ORPRO 12<br>105983<br><br>Audit=  N<br>Min Ernd=  0%<br>AddCxlDays=  10 | 12/29/2024 | Old Republic Insurance Company<br>Attn:  Regulatory Compliance Services – 17th Floor 307 N. Michigan Avenue Chicago, IL 60601 | EXCESS D & O<br><br><br>Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | 12 | $175,000.00<br><br>$0.00<br>$0.00 |
| SGC 1585-00<br><br>Audit=  N<br>Min Ernd=  0%<br>AddCxlDays=  10 | 12/29/2024 | Samsung Fire & Marine Insurance Co (USB)<br>Canopius Insurance Services<br>140 Broadway, Suite 2210 New York, NY 10005 | EXCESS D & O<br><br><br>Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | 12 | $55,125.00<br><br>$0.00<br>$0.00 |
| BCP-028369-01<br><br>Audit=  N<br>Min Ernd=  0%<br>AddCxlDays=  10 | 12/29/2024 | Homesite Insurance Company<br>Bowhead Specialty Underwriters, Inc.<br>667 Madison Avenue 5th Floor New York, NY 10065 | EMPLOYMENT PRACTICES LIABILITY INS. (EPLI)<br>Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | 12 | $31,041.00<br><br>$1,098.85<br>$0.00 |
| Audit=<br>Min Ernd=<br>AddCxlDays= | | | Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | | |
| Audit=<br>Min Ernd=<br>AddCxlDays= | | | Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | | |
| Audit=<br>Min Ernd=<br>AddCxlDays= | | | Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | | |
| Audit=<br>Min Ernd=<br>AddCxlDays= | | | Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | | |





# ADDITIONAL PREMIUM FINANCE SUMMARY

**LOAN NUMBER:** 1112586

**INSURED NAME:** Pinstripes, Inc.; Pinstripes Holdings, Inc.

**AGENT NAME:** Lockton Companies - Illinois

The attached finance agreement represents the corresponding loan figures for the additional policy premium(s) should you elect to finance through AFCO Direct and add the additional premium(s) to your existing loan agreement.

**YOUR PAYMENT AMOUNT WILL BE INCREASED AS FOLLOWS ONCE THE ADDITIONAL PREMIUM HAS BEEN ADDED TO YOUR ACCOUNT BALANCE:**

| | |
|---|---|
| **NUMBER OF INCREASED PAYMENTS:** | 9 |
| **AMOUNT OF PAYMENT INCREASE:** | $53,214.29 |
| **ORIGINAL PAYMENT AMOUNT:** | $159,247.95 |
| **NEW PAYMENT AMOUNT:** | $212,462.24 |
| **NEW PAYMENT AMOUNT WILL BEGIN:** | 2/1/2025 |

**Please contact your agent with any further questions**.

Thank you for financing your insurance premiums through AFCO Direct.