IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PINSTRIPES HOLDINGS, INC., *et al.*,[1] | Case No. 25-11677 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 14, 84 & 99** |

**OBJECTION OF FEDERAL REALTY OP LP TO (I) NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE REGARDING CURE AMOUNTS; AND (II) DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS, (B) APPROVING FORM AND MANNER OF NOTICE, (C) APPROVING DESIGNATION OF STALKING HORSE BIDDER AND STALKING HORSE BID, (D) SCHEDULING AUCTION AND SALE HEARING, (E) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND UNEXPIRED LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING PURCHASE AGREEMENTS, AND (B) AUTHORIZING A SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

Federal Realty OP LP (the "Landlord"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Debtors' (i) *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* (the "Cure Notice") [D.I. 99][2] and (ii) motion for entry of an order, *inter alia,* approving the form of purchase agreement between the Debtors and the Stalking Horse Bidder or any other Successful Bidder(s), and authorizing the Sale of the Assets and the assumption and assignment of certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Pinstripes Holdings, Inc. (6699); Pinstripes, Inc. (8608); Pinstripes Hillsdale LLC (6064); Pinstripes at Prairiefire, Inc. (7018); and Pinstripes Illinois, LLC (6432). For purposes of these chapter 11 cases, the Debtors' service address is 1150 Willow Road, Northbrook, Illinois 60062.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Sale Motion (defined below) and Cure Notice.

Assumed Contracts, including the Lease, to the Stalking Horse Bidder or such other Successful Bidder [D.I. 14] (the "Sale Motion"), and respectfully represents as follows:

## I.     BACKGROUND

1.     On September 8, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.[3]

2.     The Debtors lease retail space (the "Premises") from the Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") at the location more fully set forth in the attached **Schedule A**.

3.     The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.     On the Petition Date, the Debtors filed the Sale Motion, seeking to establish procedures (the "Bidding Procedures") to govern (i) the potential Sale of the Debtors' Assets and (ii) the assumption and assignment of certain Assumed Contracts, including the lease, to the Stalking Horse Bidder or such other Successful Bidder(s).

5.     On September 19, 2025, the Court entered an order approving the Bidding Procedures to govern the proposed Sale of the Debtors' Assets (the "Bidding Procedures Order")

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

[D.I. 84]. Pursuant to the Bidding Procedures Order, the Auction, if additional Qualified Bids other than the Stalking Horse Bid are received, is set to take place on October 17, 2025.

6. On September 24, 2025, the Debtors filed the Cure Notice, which identifies those executory contracts and unexpired leases that may be assumed and assigned to the Stalking Horse Bidder or such other Successful Bidder in connection with the Sale, together with the Debtors' Proposed Cure Amounts to be paid in connection with any such assumption and assignment, including for the Lease. However, the Proposed Cure Amount with respect to the Lease, as set forth in the Cure Notice, does not reflect all outstanding balances due and owing to the Landlord under the Lease, and does not account for accruing but unbilled charges which may come due in the future. The Proposed Cure Amount set forth by the Debtors must be modified to reflect additional charges owing, as well as recognize the liability for accruing charges due under the Lease, as set forth herein. The Cure Notice established October 9, 2025, at 4:00 p.m. (ET) as the deadline for Landlord to object to the assumption and assignment of the Lease on any grounds, including, without limitation, (a) the amount of the Proposed Cure Amount (and must state, in its objection, with specificity, what cure amount is required with appropriate documentation in support thereof) and (b) the provision of adequate assurance of future performance by the Stalking Horse Bidder.

7. The Landlord has also received certain high-level, consolidated financial modeling and growth assumptions prepared for the "Newco" Stalking Horse Bidder identified by the Consenting Lenders, which, according to the Sale Motion, may be Punch Bowl Social, Inc. or one of its subsidiaries or affiliates should the Stalking Horse Bidder become the Successful Bidder, which purports to demonstrate adequate assurance of future performance. While the Landlord is continuing to review this information, the projections are consolidated and appear to be combining

the Newco with the existing Punch Bowl Social business, and provides no other or further information with respect to how Newco will be organized and/or capitalized and who the ultimate assignee of the Lease will be, including whether such Newco has any operating experience or assets, to demonstrate adequate assurance of future performance under the Lease.  As such, Landlord objects to any assumption and assignment of the Lease to the Stalking Horse Bidder absent a demonstration, through the provision of additional information to the Landlord, and/or a record made at the Sale Hearing, of their ability to perform under the Lease.  Landlord will work with the Debtors and the Stalking Horse Bidder in advance of the Sale Hearing to resolve Landlord's concerns regarding the adequate assurance information provided to date, and reserves its rights to raise other and further objections once complete adequate assurance information has been provided.

8. The Landlord files this Objection in order to preserve all of its rights with respect to any defaults under its Lease to be cured at the time of any assumption and assignment of the Lease to any Successful Bidder, including the Stalking Horse Bidder, and reserves its right to raise further and other objections to the assumption and assignment of the Lease, including as to a Successful Bidder's, in addition to the Stalking Horse Bidder's, ability to provide adequate assurance of future performance under the Lease, and to raise any objections to the final form of any Sale Order and/or asset purchase agreement ("APA") consistent with the points raised in this Objection.

II. **OBEJECTION**

9. While Landlord does not generally object to the Sale of the Debtors' Assets to maximize the value of the estates for the benefit of all creditors, including as to the Landlord's Lease, Landlord does object to any proposed assumption and assignment of the Lease to the

Stalking Horse Bidder (or such other Successful Bidder), unless and until the Debtors and/or the Successful Bidder, including the Stalking Horse Bidder, comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and the Successful Bidder, including the Stalking Horse Bidder, to satisfy said requirements, including to demonstrate adequate assurance of future performance under the Lease, the Court should deny any proposed assumption and assignment of the Lease.

10. In addition, the Proposed Cure Amount set forth in the Cure Notice for the Lease does not reflect the outstanding balance due and owing to the Landlord under the Lease, or account for accruing or accrued, but unbilled charges or obligations under the Lease which may come due in the future. The Proposed Cure Amount must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Lease, as more fully set forth herein.

11. Further, any proposed Sale Order must be modified to address the Landlord's objections raised herein.

    **A.    The Debtors' Proposed Cure Amount Does Not Provide for Payment Of All Obligations Due and Owing Under The Lease.**

12. To assume and assign the Lease, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of

5

>assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

13.     The Landlord's cure, as compared to the Debtors' cure, is summarized more fully in **Schedule A** attached hereto, and those charges comprising the Landlords' cure are more fully detailed in Exhibit 1, which is attached hereto and incorporated into this Objection by this reference.[4]

### i. Year-end Adjustments and Reconciliations.

14.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the shopping center pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts

---

[4] Unless otherwise indicated, Landlord's cure does not include any charges that have been billed or come due after the filing of the Cure Notice or charges that are billed directly to the Debtors, including in some cases, real estate taxes.  To the extent Landlord is later billed for any amount due to the Debtors' failure to pay, Landlord reserves the right to amend the Objection to include such amounts.  The Debtors must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to seek payment (and amend this Objection to the extent necessary) for any amounts that come due under the Lease through the later of the date of any cure payment or effective date of the assumption and assignment of the Lease.  In addition, unless otherwise indicated, Landlord's cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlord's actual pecuniary losses.  Presently, Landlord estimates that its attorneys' fees incurred to date are in an amount not less than $5,000.

6

estimated and paid against actual charges incurred at the shopping center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2024 may not yet have been billed under the Leases, and such charges that are accruing for 2025 will not be billed until 2026). In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Accordingly, any proposed Sale Order must make clear that the Sale and the assumption and assignment of the Lease is not free and clear of these continuing and accruing obligations under the Lease.

15. Since Section 365(b) only requires the Debtors to cure defaults under the Lease at the time of an assumption and assignment, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance. As a result, the Court should deny any attempt to assign the Lease "free and clear" of these obligations.

16. Debtors (or the Successful Bidder, including the Stalking Horse Bidder) remain responsible for all accrued or accruing charges under the Lease and must pay such charges when they come due under the Lease. The Debtors must assume and assign the Lease to a purchaser

subject to all its terms and any purchaser must assume and assign all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease. Any proposed Sale Order should clearly state that the Debtors (or the Successful Bidder) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the Sale.  In addition, any provision in the proposed Sale Order that purports to release the Debtors (or the Successful Bidder) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease, or any nonmonetary defaults where performance is required as cure at or after the assignment of the Lease.

17. Finally, the Lease requires the Debtors (or the Successful Bidder) to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or shopping centers by the Debtors, the Successful Bidder, or their agents.  Any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[5]  In the alternative, the Debtors must provide (by tail insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption or assumption and assignment of the Lease.  Nothing in any proposed Sale Order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any proposed

---

[5] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption (or assumption and assignment) must be in accordance with all provisions of the Lease.

Sale Order specifically preserves its right to pursue such rights irrespective of any resolution of the cure amounts herein.[6]

18.     Landlord, therefore, requests that in the event an assumption and assignment of the Lease is approved by the Court, language must be inserted into any proposed Sale Order to provide that the Successful Bidder shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Lease, when such charges become due in accordance with the terms of the Lease, including with respect to indemnification and insurance obligations.  Alternatively, a suitable escrow for the Lease equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlord when the year-end adjustments are actually billed and become due pursuant to the terms of the Lease.

### ii.     Attorneys' Fees, Costs, and Interest.

19.     The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect their interests.  The Debtors are obligated to cure all defaults under the Lease and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease.  See 11 U.S.C. § 365(b)(1)(A) and (B).  The principle is well-recognized.  In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

20.     The Debtors (or any assignee) take the Lease *cum onere*—subject to existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Lease.  In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va.

---

[6] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlord's location.

9

y

1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under its Lease with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Lease. See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

21.  Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. In re Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs

for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entm't Corp., et al., 01 Civ. 8946 (RWS), 2002 U.S. Dist. LEXIS 6186 at *25 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

22. Accordingly, unless otherwise agreed as between the Successful Bidder, and the Landlord, Landlord further requests that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' defaults under the Lease. To date, the Landlord estimates its attorney's fees and costs to be approximately $5,000 through the date of this Objection.

### iii. The Cure Amounts Serve Only as Estimates.

23. Landlord can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to

impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which they are entitled under the Lease.

### iv. The Debtors Must Pay Undisputed Cure Amounts Immediately.

24. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, the undisputed portion of the cure amount should be paid immediately. Debtors should escrow any disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

### B. Any Assumption and Assignment Must Comply with Terms of the Lease.

25. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

26. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the

assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

27. BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

28. Section 365(f)(1) does not modify or override Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to override the specific protections granted to landlords in Section 365(b)(3)(C)). While Landlord does not believe that the Stalking Horse Bidder intends to change the use, and will need assurance that the Stalking Horse Bidders intends to continue to operate at the Premises under the Pinstripes banner, any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance.

**C.    Additional Security.**

29. While the Stalking Horse Bidder may be backed by entities with industry experience and/or adequate capitalization, here, Silverstrike, LLC is a "Newco", so the assignee entity itself does not possess such experience or capitalization and, therefore, the Stalking Horse Bidder should provide some type of credit enhancement, such as: (i) a guaranty to secure the Newco's obligations under the Lease from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit. Pursuant to Section 365(l), where the proposed assignee is a newly formed entity with no financial or operating history like Silverstrike, a landlord may require a

security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis. Unless Landlord agrees otherwise, this is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an assignee with no operating history.

### D.  Assumption and Amendment Agreement

30. Landlord also requests that, as a condition to any order approving assumption and assignment of any of Landlord's Lease, the Successful Bidder shall be required to enter into a short form Assumption and Amendment Agreement whereby the Successful Bidder shall become directly obligated to Landlord and the provisions of the Lease regarding notice addresses will be modified. A form of Assumption and Amendment Agreement can be provided upon request of the Successful Bidder.

### E.  The Debtors Must Make a Record as to Adequate Assurance of Future Performance.

31. Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtors may only assume and assign the Landlord's Lease if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> (A)  of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)  that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center; . . . .

32.     The burden of proof on adequate assurance issues is with the Debtors.  See In re Lafayette Radio Elecs. Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

33.     Further, since the Debtors' location is located in a shopping center, Debtors and the Successful Bidder must meet the heightened requirements of adequate assurance that the Bankruptcy Code contemplates in the case of such assignments.  The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under Section 365(b)(1)(C).  In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999).  In order to assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) – (D).  See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F. 3d 291, 299 (3d Cir. 2000).  The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially.  See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center.  See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center.  See 11 U.S.C. § 365(b)(3)(D).

34.     As discussed above, the Landlord has only been provided with certain consolidated financial modeling and growth projections for the Stalking Horse Bidder, which does not identify the assignee under the Lease, and how that assignee will be capitalized or the organizational structure of the purchaser/assignee, and whether such assignee has any operational history and assets.  Landlord, therefore, objects to the Stalking Horse Bidder's ability to provide adequate

assurance of future performance under the Lease absent further discussions and information being provided, and all rights are reserved on these issues.

35. The Landlord understands that the Stalking Horse Bidder is a "NewCo" being funded by Silverview. However, the adequate assurance package provided lacks any information as to the assignees intended use for the space, its business plan or capital structure, or evidence of a financial commitment by Silverview to fund operations. While Landlord is not aware that the Stalking Horse Bidder, if declared the Successful Bidder, has an intention of changing the use at the Premises, but no information has been provided that indicates otherwise, or whether Silverview has the relevant consumer and retail experience to provide the resources the "NewCo" and its management need to be successful.

36. In the event that the Stalking Horse Bidder, if declared the Successful Bidder, intends to change the use at the Premises, any such assignment must be subject to all the provisions of the Lease, and the proposed Sale Order must be modified to ensure the Successful Bidder's compliance with the Section 365(b)(3) heightened adequate assurance requirements, specifically that it will comply will all provisions of the Lease, including as to radius, location, use or exclusivity.

37. Moreover, until such time as the Lease is assumed and assigned, the Debtors as tenant under the Lease, must remain liable to the Landlord in all respects pursuant to Section 365(d)(3) of the Bankruptcy Code, and only if the Lease is assumed and assigned and the cure amount paid, may the Debtors be released from liability pursuant to Section 365(k) of the Bankruptcy Code. To that end, any proposed Sale Order must be modified to ensure that no Section 365(k) release occurs until such time as a Lease is assumed and assigned pursuant to a subsequent assignment order entered by the Court.

> **F. Any Assignment of Leased Real Property Must be Subject to All Applicable Restrictive Covenants.**

38. The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment. See 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984); In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012). As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties. Accordingly, the assumption and assignment of the Lease, in accordance with section 365 of the Bankruptcy Code and applicable law, requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the property.

39. Accordingly, Landlord objects to the assumption and assignment of the Lease to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations relating to the Lease or the shopping center.

**III. JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

40. To the extent consistent with the objections expressed herein, Landlord joins in the objections of other landlords.

**IV. RESERVATION OF RIGHTS**

41. The Landlord reserves its right to (i) raise further or other objections as may be necessary, including but not limited to, the final form of order approving the Sale and any

assumption and assignment of the Lease based upon any new information provided by the Debtors or the Stalking Horse Bidder, or upon any different relief requested by the Debtors; (ii) require payment of all Lease charges and compliance with all Lease terms; and (iii) to require any assignment on a form acceptable to Landlord.

## V. **CONCLUSION**

WHEREFORE, the Landlord respectfully requests that the Court enter an order consistent with the foregoing Objection and for such other and further relief as may be just and proper under all of the circumstances.

Dated: October 9, 2025
Wilmington, Delaware

*/s/ Leslie C. Heilman*
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
Erin L. Williamson (DE No. 7286)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
      roglenl@ballardspahr.com
      vesperm@ballardspahr.com
      williamsone@ballardspahr.com

*Attorneys for Federal Realty OP LP*